895 A.2d 1180 (2006)
385 N.J. Super. 1
Mary Ann BAGNANA, Plaintiff-Appellant,
v.
Jennifer WOLFINGER and Frederick Wolfinger, Defendants-Respondents, and
Jumpking, Inc., Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted October 6, 2005.
Decided April 21, 2006.
*1181 Sal B. Daidone, Voorhees, attorney for appellant.
Wolff, Helies, Duggan, Spaeth & Lucas, Manasquan, attorneys for respondents (Bruce E. Helies, on the brief).
Before Judges WEFING, WECKER and GRAVES.
The opinion of the court was delivered by
GRAVES, J.A.D.
This case concerns the duty owed by homeowners to a social guest. Plaintiff[1] Mary Ann Bagnana and her husband had been "double jumping"[2] on defendants' *1182 fourteen-foot diameter trampoline when she suffered serious injuries to her right knee. In her complaint, plaintiff alleged defendants[3] knew their trampoline was dangerousespecially if used by two people at the same timeand she claimed defendants negligently "failed to warn" her of the dangerous condition, "failed to remove" the dangerous condition, and "failed to maintain the premises in a safe and reasonable fashion." Preliminarily, we note that our research has not disclosed any reported New Jersey decision addressing a homeowner's duty to a social guest injured while using the homeowner's trampoline.
In their motion for summary judgment, defendants argued they did not breach any duty owed to plaintiff because she was aware of the dangers involved in using their trampoline. The trial court agreed that plaintiff was aware of the "inherent" dangers associated with using defendants' trampoline and granted summary judgment dismissing plaintiff's complaint. Because we conclude a reasonable jury could find defendants knew or should have known that their trampoline posed an unreasonable risk of danger to plaintiff, that the risk was not obvious, that plaintiff was unaware of the danger, and that defendants failed to either disclose or remove the danger, we reverse.
It is undisputed that plaintiff was an invited guest at defendants' backyard barbecue. In such circumstances, if defendants knew or had reason to know that the use of their trampoline would expose their guest to an unreasonable risk of harm of which she was not aware, then defendants were obligated to exercise reasonable care to correct the condition or warn their guest of the danger. Restatement (Second) of Torts § 342 (1965). In other words, "a homeowner has a duty to warn the unwary social guest of a condition of the premises that the homeowner knows or has reason to know creates an unreasonable risk of injury." Parks v. Rogers, 176 N.J. 491, 494, 825 A.2d 1128 (2003). A landowner, however, "is not required to provide greater safety on his premises for a social guest than he would for himself. For example, the landowner does not have a duty to scour the premises to discover latent defects." Id. at 498, 825 A.2d 1128.
In some cases, when it is abundantly clear that the risk of danger is open, obvious, and easily understood, there may be no duty to warn. See, e.g., Tighe v. Peterson, 175 N.J. 240, 241, 814 A.2d 1066 (finding defendants had no duty to warn plaintiff of the danger of diving into the shallow end of their swimming pool), aff'g o.b., 356 N.J.Super. 322, 812 A.2d 423 (App.Div.2002); Longo v. Aprile, 374 N.J.Super. 469, 475, 865 A.2d 707 (App. Div.2005) (finding landowners did not breach duty of care by failing to warn neighbor, a social guest, who was working alone on defendants' roof, eight feet above ground, because the danger that neighbor encountered was self-evident); Endre v. Arnold, 300 N.J.Super. 136, 143, 692 A.2d 97 (App.Div.) (noting that alleged defects in stairway were obvious and, even if dangerous, "no reasonable fact finder could conclude that the decedent was unaware of those conditions."), certif. denied, 150 N.J. 27, 695 A.2d 670 (1997).
On the other hand, when a plaintiff is unfamiliar with the premises, and therefore unaware of the dangerous condition or situation, then summary judgment based on lack of a duty to warn is less likely. *1183 See, e.g., Parks, supra, 176 N.J. at 502-03, 825 A.2d 1128 (reversing summary judgment in favor of homeowners where plaintiff, who fell down the stairs during her first visit to defendants' house, did not realize "the handrail did not extend the full length of the stairway...."); Sussman v. Mermer, 373 N.J.Super. 501, 507-08, 862 A.2d 572 (App.Div.2004) (finding a genuine issue of material fact existed as to whether plaintiff, who was injured while exiting defendants' home from the front porch, had ever used the front porch previously); Campbell v. Hastings, 348 N.J.Super. 264, 266, 269-272, 791 A.2d 1081 (App.Div.2002) (reversing summary judgment in favor of defendant homeowner where plaintiff, who had never been in defendant's home before, "fell into" a sunken foyer).
Trial courts must "employ a fact-sensitive analysis when determining whether a host has fulfilled his or her duty to warn a particular guest" of a known dangerous condition on the premises. Tighe, supra, 175 N.J. at 241, 814 A.2d 1066. In the present case, defendant Jennifer Wolfinger testified that when she purchased the trampoline she received a "Users Manual," and she acknowledged reading the manual. The manual, which plaintiff submitted to the trial court in opposition to defendants' summary judgment motion, states that "[i]t is the responsibility of the owner to insure that all users of this trampoline are adequately informed of all warnings and safety instructions." And the Users Manual provides the owner of the trampoline with this general warning:
WARNING
USING THIS TRAMPOLINE EXPOSES YOU TO THE RISK OF SERIOUS INJURY, INCLUDING PERMANENT PARALYSIS OR EVEN DEATH FROM LANDING ON THE BACK, NECK OR HEAD. THIS RISK EXISTS EVEN IF YOU LAND ON THE TRAMPOLINE MAT (BED).
In addition, the Users Manual explains the owner's role in preventing accidents as follows:
It is not uncommon for trampolines to be informally used in a home or backyard setting. If so, it is the responsibility of the owner or other person responsible for the trampoline to ensure that young or inexperienced persons use the trampoline only under mature supervision, that the warnings and cautions set forth in this manual are made known to all such prospective users, and that the rules are enforced in order to minimize the likelihood of accidents and injuries. This may require, during periods of time when supervision is unavailable or inadequate, that the trampoline be disassembled, placed in a secure area, or otherwise secured against unauthorized use. Other options which may be considered are the covering of the trampoline with a heavy tarp, which can be secured by chains and locks, or tipping the trampoline up against the side of a structure and securing it at the top with a locking device. It is also the responsibility of the owner to post the Safety Instruction Placard on the trampoline and make sure that all users are properly informed of these rules along with all warnings and safety instructions.
The Users Manual also contains the following specific warning: "Never allow more than (1) person on the trampoline at a time." This warning, on page three of the manual, is repeated and explained on page ten of the manual: "Permit only one performer at a time on the trampoline. Two (2) or more performers create additional risks of injury due to collisions, being bounced off the trampoline, and unexpected responses by the trampoline mat (bed)." (Emphasis added). Apparently, *1184 when more than one person is jumping at a time, the movement of the trampoline mat caused by one jumper may increase the thrust capacity of the mat, thereby creating the likelihood of significant and unexpected impact on the other jumper. This risk of harm posed by the thrust capacity of the trampoline mat, however, is a more subtle type of danger than the risk of harm that is more readily apparent from performing improper stunts, striking another jumper, or falling off the trampoline.
The assembly instructions for the trampoline advised defendants to "attach the yellow warning placard using the enclosed tie wrap. Place it at the point where you will normally mount the trampoline. The tie wrap should go around a vertical frame joint and a top rail to keep it from moving laterally." At her deposition, Jennifer Wolfinger confirmed that the yellow warning placard that came with the trampoline had a list of rules on itincluding the rule that only one person was permitted to use the trampoline at a time. Wolfinger also acknowledged that the warning placard had been removed from the trampoline prior to plaintiff's accident:
Q. When you purchased the trampoline, did it come with any placards?
A. Yes.
Q. . . . [W]ell what did you do with the placard when you put the trampoline up?
A. At first my son hung it on the shed, then eventually it kept falling off, so he put it inside the shed. It was there, but not really on display.
Q. When you say hung it on the shed 
A. He hung it on a hook like with a  what do you call those things?
Q. Plastic tie?
A. Yes. Thank you, tie wraps. And it didn't really stay, so he put it back into the shed.
During oral argument before the trial court, defendants' attorney had this to say about the yellow warning placard:
[T]here was a placard supplied by the manufacturer with this trampoline that had like ten warnings on it. I think it was 8 1/2 by 11 or thereabouts.
That was affixed to the trampoline, at one point in time, but the plastic buckling that they supplied for it broke and so there was no way they could hang it on [the trampoline]. That is a placard that had been placed on the shed, at some point in time, and then it fell off the shed and it was put inside the shed.
Although the trial court found that plaintiff "was experienced on the trampoline," and that she was "familiar with the warnings and understood that there were certain dangers inherent upon climbing up onto the trampoline," the court did not make any specific factual findings to support its conclusions, and we have been unable to locate any in the record. Furthermore, we have been unable to ascertain the exact nature and location of any warnings that may have been placed on the trampoline by the manufacturer.
At this stage of the proceedings, the competent evidential materials must be viewed in the light most favorable to plaintiff, the non-moving party, and she is entitled to the benefit of all favorable inferences in support of her claim. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). And plaintiff's certification in opposition to defendants' summary judgment motion contains the following information:
16. My husband and I were not familiar with trampolines and were inexperienced.
. . . .
18. No one gave us warnings and/or advised us of the cautions set forth in *1185 the manual [or] the existence of warnings and safety rules.
19. There was never a physical securing of the trampoline against unauthorized and unsupervised use.
20. I have been told that the manufacturer warned against 2 people using the trampoline at the same time. I was never aware that trampolines could not be used by 2 or more people at the same time.
21. During the entire time that Ms[.] Wolfinger had the trampoline in her [backyard], it was constantly being used by groups of kids. There were a few times when she had parties for neighbors and even the adults got on the trampoline together. This was a common practice.
22. The times where multiple people were on the trampoline and I was present, so was Ms[.] Wolfinger present. She never once raised any concern that what the kids and adults were doing was wrong, and she never once told them to stop jumping as a group.
In a letter brief submitted in response to plaintiff's certification, defendants conceded that plaintiff had only been on the trampoline "on two occasions prior to the date of her [injury]." Courts in other jurisdictions have relied upon significantly more trampoline experience to support their decisions to grant or affirm summary judgment against the injured trampoline user. Crosswhite v. Jumpking, Inc., 411 F.Supp.2d 1228, 1232 (D.Or.2006) (granting summary judgment to trampoline manufacturer where plaintiff had "over six years experience with trampolines"); Anderson v. Weslo, Inc., 79 Wash.App. 829, 906 P.2d 336, 338-39 (1995) (affirming summary judgment in favor of landowners and finding plaintiff was an experienced trampoline user because he had performed "at least 100" double flips on trampolines before sustaining injury); Burchinal v. Gregory, 41 Colo.App. 490, 586 P.2d 1012, 1013-14 (1978) (finding plaintiff was an experienced trampoline user where he had successfully performed back flips on trampolines "several times" before being injured and had received school instruction on how to properly use a trampoline); Garrett v. Nissen Corp., 84 N.M. 16, 498 P.2d 1359, 1362-64 (1972) (affirming summary judgment in favor of trampoline manufacturer where plaintiff was a gymnast and had performed the trampoline maneuver during which he was injured approximately twenty times previously), overruled on other grounds, Klopp v. Wackenhut Corp., 113 N.M. 153, 824 P.2d 293, 297 (1992).
In a case concerning diving, another recreational backyard activity, our Supreme Court affirmed summary judgment in favor of the landowners where the plaintiff, a social guest who injured himself during a dive into the shallow portion of defendants' swimming pool, "had been in the pool approximately twenty times before and . . . was well aware of where the shallow and deep portions [of the pool] were situated." Tighe, supra, 175 N.J. at 241-42, 814 A.2d 1066. There was no comparable evidence of plaintiff's experience with trampolines in this case.
Although plaintiff in this case was injured while double jumping on a trampoline, and the plaintiff in Vallillo v. Muskin Corp., 218 N.J.Super. 472, 528 A.2d 53 (App.Div.), certif. denied, 109 N.J. 496, 537 A.2d 1287 (1987), was injured when he struck his head on the bottom of an above-ground pool while attempting a shallow dive, the circumstances surrounding the homeowners' conduct are similar. In Vallillo, defendant homeowners had constructed a deck around the pool in such a way as to obscure the one warning sign which read: "DANGERDO NOT DIVE." Id. at 474, 528 A.2d 53. While acknowledging plaintiff's status as a social *1186 guest, we reversed summary judgment dismissing plaintiff's complaint noting that "the question of whether defendants breached their duty to plaintiff cannot be answered by taking so narrow a view as to look only at the condition, namely, the shallowness of the pool." Id. at 476, 528 A.2d 53. Even though the twenty-three-year-old plaintiff was six feet, four inches tall, weighed 190 pounds, and knew that the pool was no deeper than four feet, we found that it was for the jury to determine whether or not plaintiff was comparatively negligent in light of defendants' conduct, which included depriving plaintiff of knowledge of the prohibition against diving and defendants' "failure to enforce the pool industry's prohibition pursuant to the literature which came with the [pool] liner." Id. at 477, 528 A.2d 53.
For similar reasons, we conclude that it is appropriate for a jury in this case to assess all of the relevant circumstances, including: (1) whether defendants failed to enforce the manufacturer's rules and prohibitions pursuant to the User's Manual, (2) whether defendants removed the yellow warning placard from the trampoline prior to the accident, (3) whether defendants may have condoned or encouraged double jumping by allegedly failing to object when it occurred in their presence, and (4) whether plaintiff was comparatively negligent for failing to use due care for her own safety. See Vallillo, supra, 218 N.J.Super. at 477-78, 528 A.2d 53; see also Sollami v. Eaton, 201 Ill.2d 1, 265 Ill.Dec. 177, 772 N.E.2d 215, 229 (2002) (Kilbride, J., dissenting) (concluding that jury should decide whether risk of injury to knees when more than one person was jumping at a time was open and obvious); Dan B. Dobbs, The Law of Torts 598-99 (2001) (noting "the fact that a danger is obvious is. . . not necessarily conclusive evidence that the licensee can be expected to avoid it without a warning by the landowner.").
We are satisfied, however, that plaintiff's comparative fault, if any, does not bar recovery at the summary judgment stage as a matter of law. N.J.S.A. 2A:15-5.1 ("Contributory negligence shall not bar recovery in an action by any person... to recover damages for negligence resulting in . . . injury to person . . . if such negligence was not greater than the negligence of the person against whom recovery is sought . . . ."); see also Filipowicz v. Diletto, 350 N.J.Super. 552, 561, 796 A.2d 296 (App.Div.2002) ("[I]t is the function of the jury . . . to determine the comparative fault of each party . . . ." (citations omitted)).
In our view, this is not a case where the evidence is so "one-sided" that defendants must prevail as a matter of law. Brill, supra, 142 N.J. at 540, 666 A.2d 146. A reasonable jury could conclude that defendant landowners knew or should have known that their trampoline posed an unreasonable risk of danger to plaintiff, that the risk was not obvious, that plaintiff did not recognize the danger, and that defendants breached their duty to either disclose or remove the danger. Parks, supra, 176 N.J. at 501, 825 A.2d 1128.
We therefore reverse and remand for further proceedings consistent with this opinion.
NOTES
[1] Some court documents list Mary Ann Bagnana's husband, Stephen Bagnana, as an additional plaintiff. Because only Mary Ann Bagnana is named in the complaint and in the order granting summary judgment, we refer to Mary Ann Bagnana as "plaintiff."
[2] The term "double jumping" is used to describe the situation when multiple people simultaneously jump on a trampoline. See Ford ex rel. Ford v. Nairn, 307 Ill.App.3d 296, 240 Ill.Dec. 432, 717 N.E.2d 525, 526 (1999).
[3] Pursuant to a stipulation of dismissal filed on October 21, 2004, plaintiff's claims against Jumpking, Inc. were dismissed. We therefore refer to the Wolfingers as "defendants."