18 A.3d 233 (2011)
420 N.J. Super. 22
Clement E. OJINNAKA, Estate of Arinzechukwu Ojinnaka, Lawritha Ojinnaka, Plaintiffs,
v.
CITY OF NEWARK, Newark Police Department, Defendants.
L-1473-07
Superior Court of New Jersey, Law Division, Essex County.
Decided January 22, 2010.
*235 Alan Roth, Newark, for plaintiffs (Bendit Weinstock, P.C., attorneys).
Gary S. Lipshutz and Julien X. Neals, Newark, for defendants (Newark Corporation Counsel, attorneys).
KENNEDY, J.S.C.
Defendant City of Newark moves for summary judgment seeking to dismiss claims brought against it by the estate of Arinzechukwu ("Arinze") Ojinnaka, deceased, and by the decedent's parents, Clement and Lawritha Ojinnaka. Plaintiffs assert that Newark police officers were not adequately trained and were otherwise negligent in responding to the report of a motor vehicle accident on December 21, 2005, leading to the death of Arinze. Plaintiffs bring wrongful death and survivor claims, as well as a claim under Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980).
The City of Newark contends that it is immune from liability under the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 59:10-10, and that it otherwise breached no duty to plaintiffs. The City of Newark also contends that the Portee claim is without foundation as a matter of law and must be dismissed.
Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536, 666 A.2d 146 (1995). See also Jolley v. Marquess, 393 N.J.Super. 255, 267, 923 A.2d 264 (App.Div.2007).
"At this stage of the proceedings, the competent evidential materials must be viewed in the light most favorable to plaintiff, the non-moving party, and [he] is entitled to the benefit of all favorable inferences in support of [his] claim." Bagnana v. Wolfinger, 385 N.J.Super. 1, 8, 895 A.2d 1180 (App.Div.2006) (citing R. 4:46-2(c); Brill, supra, 142 N.J. at 540, 666 A.2d 146). See also In re Estate of Sasson, 387 N.J.Super. 459, 462-63, 904 A.2d 769 (App. Div.), certif. denied, 189 N.J. 103, 912 A.2d 1263 (2006).
The circumstances of this case are very tragic. Arinze was a nineteen year old college student who in December 2005 worked a late night shift at United Parcel Service ("UPS") near the Newark Airport. According to UPS records, he had reported for duty on December 20, 2005, at 6:45 p.m. and checked out of work at 5:02 a.m. on December 21, 2005. Arinze at that time lived with his parents, Clement and *236 Lawritha Ojinnaka, in Irvington, New Jersey and used his father's blue 1991 Chevrolet Lumina van to drive to and from work at the UPS facility.
At 5:27 a.m. on December 21, 2005, Nabil Robil, a limousine driver, was driving from Newark Airport and was on a sharply curving ramp that led from Routes 1 & 9 North onto Route 78 west when he saw a late model van that appeared to have hit the lane barrier. Its tail lights were illuminated and the rear of the van was "sticking out" near the driving lane and "looked dangerous." Robil did not see anyone in or near the van but he called Newark Police on 911 to report what he saw.
The Newark Police "event chronology" recorded the 911 call at 5:27 a.m. and stated: "auto accident with injuriesCode 3 event comment. EMS notified for car hitting wall. Car is still running. Car was coming off airport ramp onto 78. No further information."
Lieutenant Darren Marasco of the Newark Police Department was on duty in the area at the time and, hearing police radio transmissions, arrived on the scene at approximately 5:30 a.m. It was cold and dark at the time. He could not recall whether, when he arrived, the van's motor was running or its lights were illuminated. He could not recall if the windows were broken and saw no one near the vehicle. He assumed the car had been stolen and abandoned, despite the fact that the vehicle had not been reported stolen at that timea fact confirmed by the police dispatcher.
Marasco said the right side of the van was up against the barrier and that there was no room on that side to walk between the van and the barrier. He waited for a regular patrol unit to arrive to take control of the scene.
A few minutes later, Newark Police Officers Cain and Robinson arrived. They shined their flashlights over the barrier near the car and saw nothing and assumed the driver "fled the scene." Cain conferred with the police dispatcher and identified Clement Ojinnaka as the owner of the vehicle. Although he was given Clement's address in Irvington, he did not attempt to contact him. He noticed that the keys were in the vehicle and the van's right side against the wall was damaged. Also, the passenger windows were broken. EMS, Search & Rescue, and the Newark Fire Department arrived at 6:05 a.m. The Fire Department placed "speed dry" on the road surface, but did not search for any occupant of the vehicle. Captain Kraemer of the Newark Fire Department recalled looking over the wall and thinking that it was "a drop" from the roadway over the wall. The car was towed at 7:15 a.m. and at that time police left the area.
There was no evidence of blood in the van and no obvious evidence that anyone had been ejected from the vehicle.
No one searched the area for the driver or possible passengers and no one from Newark attempted to contact Clement Ojinnaka from the scene. No one attempted to examine the barrier wall to ascertain the vehicle's trajectory or point of initial impact. No one appears to have walked back along the barrier wall, while peering over into the brush below. Rather, a Newark police officer simply sent Clement Ojinnaka a letter the next day asking him to contact the detective bureau about an "on-going investigation."
Meanwhile, Arinze's parents became concerned for their son and called UPS and were apparently advised he was still working. By 7:30 p.m. that night, they called the Irvington Police Department and reported their son missing. Irvington logged in the report and the Newark *237 Police Department reported to the Irvington Police Department on December 22, 2009, at 3:12 a.m. that it had located and removed the vehicle from a highway. Although Arinze's parents talked to the Irvington Police Department again on December 22, 2009, they were first told by the Irvington Police Department on December 23, 2009, that their vehicle was in an accident on Routes 1 & 9 and they should "go to Newark." They went to the Newark Police Department that day but were told by an officer there that the Newark Police Department had no information about an accident. They spent the next two days searching train stations and other locations in an effort to find their son.
On December 26, 2005, Clement Ojinnaka returned to Newark and was finally given the police report on the accident. He and others drove to the spot where the van had been located and, peering over the barrier wall, they saw Arinze's body lying face up in a lightly wooded area twenty feet from the barrier wall. Shortly thereafter, Newark police officers, fire officials, and New Jersey State Police arrived at the scene.
After Arinze's body was discovered, New Jersey State Police officers took photographs and measurements. They also inspected the van and found significant damage to the right front fender and passenger door. The windows in the front passenger door were missing, as was the inside front passenger door panel.
The State Police found scratch marks on the concrete barrier, indicating an initial point of impact 312 feet east of where the vehicle came to rest. The inside door panel was found in a lightly wooded area on the opposite side of the concrete barrier, apparently feet past the point of the initial impact, and Arinze's body was located on the other side of the barrier 135 feet from the point of initial impact. The van came to a stop approximately 170 feet past that point.
There were no skid marks in the roadway which would have indicated that the operator of the van attempted "heavy braking" prior to impact, and there was no evidence of tire failure prior to the collision. These factors, together with the observation that the driver side front seatbelt was in its normal, slackened position with no evidence of damage, led the New Jersey State Police to conclude that Arinze had been ejected from the vehicle through the front passenger side window.
Plaintiffs retained a pathologist who performed an autopsy on Arinze and opined that he would have survived "for a few to several hours after the accident." Plaintiffs also retained an expert on law enforcement procedures and practices who concluded that the Newark police failed to conduct an investigation to locate the driver, failed to conduct a crash investigation, and "abandoned the crash site" because the officers assumed the driver had simply "fled the crash scene."
To summarize, Newark police officers responded to an accident site coded as "auto accident with injuries." The vehicle was heavily damaged on the right side; the keys were in the van; the vehicle lights were illuminated and the right front passenger window and door panel were missing. There is some evidence that the vehicle was still running. The site of the crash was an isolated ramp onto a major highway, and there was an approximate eight foot drop from the opposite side of the concrete crash barrier down to a lightly wooded area.
There was evidence along the inside wall of the concrete crash barrier that the van had struck the wall approximately 300 feet east of the point where the vehicle came to *238 rest. Officers on the scene had the name and address of the owner of the van and knew it had not been reported stolen. Fire, search and rescue, and EMS teams were called to the site. The Newark officers left the site at 7:15 a.m., after sunrise, when the van was towed.
Although the officers did peer over the side of the barrier with flashlights at the point where the van came to rest, no one walked back along the barrier checking the underbrush on the other side after the sun had risen and no one, apparently, ever attempted to ascertain the initial point of impact. Also, no one employed the simple expedient of calling the registered owner of the vehicle to ascertain who had been driving the van or, indeed, any other information.
Finally, it is reasonably inferable that if one of the officers had walked back along the barrier looking at the underbrush he or she would have discovered Arinze, as Clement Ojinnaka and others quickly did on December 26, 2005.
Newark justifies the actions of its police officers by contending that it is not uncommon to find abandoned vehicles in the city. Also, while Newark has now changed its policy, Newark asserts that at the time of the incident its policy on finding an "abandoned vehicle" was simply to send a letter to the registered owner.
Defendant is a public entity and, except as expressly provided by the TCA, cannot be held liable "for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1(a). The intent of the TCA is to "reestablish a system in which immunity is the rule, and liability the exception." Bombace v. City of Newark, 125 N.J. 361, 372, 593 A.2d 335 (1991). The liability of the public entity must be provided for within the TCA and is subject to any statutory or common law immunity that applies. Tice v. Cramer, 133 N.J. 347, 355, 627 A.2d 1090 (1993); Rochinsky v. State Dep't of Tramp., 110 N.J. 399, 408-09, 541 A.2d 1029 (1988).
Immunity is the "dominant consideration" of the TCA, Kolitch v. Lindedahl, 100 N.J. 485, 498, 497 A.2d 183 (1985) (O. Hern, J., concurring) and "public entities are immune from liability unless they are declared to be liable by an enactment." N.J.S.A. 59:2-1 Task Force Comment; see Rochinsky, supra, 110 N.J. at 408, 541 A.2d 1029. "[I]mmunity from tort liability is the general rule and liability is the exception." Coyne v. State Dep't of Transp., 182 N.J. 481, 488, 867 A.2d 1159 (2005) (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 286, 712 A.2d 1101 (1998)).[1]
Analytically, the liability of a public entity under the TCA generally tracks that of its public employees, with some exceptions. "[W]hen the public employee is liable for acts within the scope of that employee's employment so too is the entity; conversely, when the public employee is not liable, neither is the entity." Tice, supra, 133 N.J. at 355, 627 A.2d 1090; N.J.S.A. 59:2-2.
Because the claim in this case is that Newark police officers failed to undertake an adequate investigation of a reported motor vehicle accident "with injuries", the court's first task is to peruse the TCA to determine if any explicit, statutory immunities apply to such police activity.
*239 In Suarez v. Dosky, 171 N.J.Super. 1, 407 A.2d 1237 (App.Div.1979), certif. denied, 82 N.J. 300, 412 A.2d 806 (1980), the Appellate Division considered a claim by the State of New Jersey and two state troopers that N.J.S.A. 52:5-4 immunizes them from claims of police negligence. N.J.S.A. 59:5-4 provides that "[n]either a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."
In Suarez, two state troopers came across a stranded motorist and his family at 10:30 p.m. on Route 80. After arranging for their van to be towed, the troopers refused to escort the stranded family off the highway or radio for a taxi. After the troopers left, the family began walking along the highway toward an exit and two individuals, a mother and small child, were struck and killed by passing vehicles. Suarez, supra, 171 N.J.Super. at 4, 407 A.2d 1237.
The Appellate Division held that the immunity did not apply and explained that "N.J.S.A. 59:5-4, precludes suits against municipalities and their responsible officers based upon contentions that damage occurred from the absence of a police force or from the presence of an inadequate one. How many officers a town should employ, how each should be equipped and whether a town should have any police at all are political decisions which should not be made the subject of any tort duty." Id. at 9, 407 A.2d 1237. The court noted that the complaint by plaintiffs did not rest upon a claim that police resources were improperly allocated. Ibid.
The Appellate Division added that:
[although a police officer may not be liable for failure to respond (if, for example, he was performing some other official duty), if he does respond he will be subject to liability for negligence in the performance of his ministerial duties. N.J.S.A. 59:5-4 does not insulate police officers from unfortunate results of their negligently executed ministerial duties. [Ibid, at 9-10, 407 A.2d 1237.]
The rationale employed by the Appellate Division in Suarez has been repeatedly applied by New Jersey courts in determining that N.J.S.A. 59:5-4 does not immunize police officers from the consequences of their negligence in performing non-discretionary tasks. See, e.g. Massachi v. AHL Serv., Inc., 396 N.J.Super. 486, 935 A.2d 769 (App.Div.2007), certif. denied, 195 N.J. 419, 949 A.2d 847 (2008), appeal after remand at sub nom., Massachi v. City of Neivark Police Dept., 415 N.J.Super. 518, 2 A.3d 1117 (App.Div.2010) (N.J.S.A 59:5-4 does not immunize a public entity from negligence of 911 operator who failed to accurately record critical information she was given and to follow established procedures for emergency calls); Lee v. Doe, 232 N.J.Super. 569, 557 A.2d 1045 (App. Div.1989) (although N.J.S.A. 59:5-5 would immunize officers who failed to arrest person who threatened life of party guest and who later returned to party and shot that guest, N.J.S.A. 59:5-4 itself does not afford such immunity); Shore v. Hous. Auth. of Harrison, 208 N.J.Super. 348, 506 A.2d 16 (App.Div.1986) (public security officer who was "goofing off and consequently failed to disperse juveniles who threatened and injured plaintiff with fireworks is not insulated by N.J.S.A. 59:5-4.)
A case that might be read to reach a contrary result, Sczyrek v. County of Essex, 324 N.J.Super. 235, 735 A.2d 33 (App. Div.1999), certif. denied, 163 N.J. 75, 747 A.2d 284 (2000) is arguably distinguishable. In that case a Newark police officer waiting in the courthouse to testify in a criminal case was shot and killed by a relative of the accused, who obtained the *240 weapon from a county employee who was not required to pass through the metal detector in accordance with the courthouse "security plan." Id. at 238, 735 A.2d 33.
The officer's widow instituted suit against Essex County claiming that the security plan was inadequate. She also claimed that the county was negligent in failing to respond in any way to repeated warnings from a county prison inmate that a police officer named "Sczy" was going to be murdered. Id. at 238, 735 A.2d 33.
The Appellate Division affirmed the trial court's finding that N.J.S.A. 59:5-4 immunized not only the county's selection of a security plan, which was a "policy decision", but also the decision of county officials to ignore the inmate's warning. Id. at 245, 735 A.2d 33. The ruling appeared to be premised upon the Appellate Division's conclusion that a decision not to respond at all to the inmate's warnings was a type of "tactical decision" that fit squarely within the express language of N.J.S.A. 59:5-4. Id. at 243, 735 A.2d 33.[2] In this sense, the public entity's decision in Sczyrek is closer to the type of allocation of resources determination that is immunized under N.J.S.A 59:5-4 than it is to the type of ministerial operational decision that Suarez and other cases have declared to be outside the statute's immunity.
Another case that might be difficult to reconcile with Suarez is Henschke v. Borough of Clayton, 251 N.J.Super. 393, 598 A.2d 526 (App.Div.1991). In that case, municipal police officers negligently failed to investigate the theft of articles from the plaintiffs' home and closed the matter out, allegedly contributing to the loss of plaintiffs property. Id. at 397, 598 A.2d 526. The Appellate Division found that the negligence of the police under N.J.S.A. 59:2-2 and 59:2-3 was overridden by the immunity "for failure to provide police protection" under N.J.S.A. 59:5-4. Id. at 400, 598 A.2d 526. See also Weiss v. N.J. Transit, 128 N.J. 376, 381, 608 A.2d 254 (1992)(commenting upon Henschke).
Henschke should not be overread, however. Reasonably viewed, all that Henschke teaches is that a municipality is under no duty to an individual to locate and apprehend a thief. Such a conclusion is entirely consistent with those cases holding that police are immune from liability for failing to make an arrest. N.J.S.A. 59:5-5;, Lee, supra 232 N.J.Super. 569, 557 A.2d 1045. Henschke does not diminish the principle derived from the holding in Suarez that a police officer's negligence in fulfilling a ministerial, operational function he has undertaken, thereby causing injury or contributing to a death, is not immunized under N.J.S.A. 59:5-4.
In the present case, the City of Newark did respond to an emergency call coded as "auto accident with injuries." The claim here is that the City of Newark failed in the execution of its operational duties on the scene and thus, N.J.S.A. 59:5-4 does not apply.
The City of Newark, through its police department, was under a duty to render emergency assistance to victims of automobile accidents. Praet v. Borough of Sayreville, 218 N.J.Super. 218, 527 A.2d 486 (App.Div.1987), certif. denied, 108 N.J. 681, 532 A.2d 253 (1987). The City of Newark did respond to the scene and failed to undertake anything more than a cursory examination of the van and the immediate area before it concluded, *241 wrongly, that "the driver fled the scene." Negligence in so responding is not immunized by N.J.S.A 59:5-4.
The inquiry does not end there, however. A further immunity may apply. N.J.S.A. 59:3-2(a) provides that "a public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him." The same immunity also applies to a public entity. N.J.S.A. 59:2-3(a). In Aversano v. Palisades Interstate Parkway Commission, 363 N.J.Super. 266, 832 A.2d 914 (App.Div.2003) modified, 180 N.J. 329, 851 A.2d 633 (2004), the Appellate Division reversed a trial court ruling that the defendant was immune under N.J.S.A. 59:4-8 (injuries caused by unimproved public property) and the Landowner's Liability Act ("LLA"), N.J.S.A. 2A:42A-3, under circumstances broadly analogous to those at bar.
In that case, the plaintiffs' decedent had fallen over a 300 foot cliff while sunbathing at Palisades Interstate Park. Park police arrived and simply assumed that the individual could not have survived the fall, and they therefore undertook a far less emergent "recovery operation" rather than an acute "rescue operation." When the individual was reached three hours later, he was still breathing but died sometime thereafter. The plaintiffs were prepared to prove that had an immediate rescue operation been mounted, the individual would likely have survived. Aversano, supra, at 268-70, 832 A.2d 914.
The Appellate Division reversed the grant of summary judgment to the defendants holding that the immunity for unimproved property and any LLA immunities would not insulate the defendants "if the cliffs dangerous natural condition was not the sole cause of death, and the same public entity's acts or omissions contributed substantially to reducing [Aversano's] chances of survival." Id. at 275, 832 A.2d 914. However, the Supreme Court modified the Appellate Division's decision and remanded the case to the trial court to determine if the discretionary act immunity under N.J.S.A. 59:2-3(a) and N.J.S.A. 59:3-2(a) "might apply to limit or eliminate defendants' potential liability." 180 N.J. at 332, 851 A.2d 633. The Supreme Court expressly limited its decision to property immunities and did not affirm the Appellate Division's analysis of TCA immunities, generally. Nonetheless, Aversano is instructive on the issue at bar.
Here, as in Aversano, the facts viewed most favorably to plaintiffs could easily support the conclusion that the public entity, through its police officers, unreasonably jumped to an erroneous conclusion in Aversano, that the victim could not have survived; here, that the driver fled the scenethat one exercising reasonable prudence under the circumstances would not have reached. Both cases, then, appear to raise claims of negligence in operational decisions.
The judgments and discretion at issue here and in Aversano are not the high level discretionary policy decisions the Legislature intended to immunize under N.J.S.A. 59:2-3(a) and N.J.S.A 59:3-2(a). In Costa v. Josey, 83 N.J. 49, 59, 415 A.2d 337 (1980), the Supreme Court explained
the exemption contemplated under N.J.S.A. 59:2-3(a) concerns the "exercise of judgment or discretion" in making basic policythe type made at the planning, rather than the operational level of decision making. Moreover, immunity is contingent upon proof that discretion was actually exercised at that level by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice.
See Coyne, supra, 182 N.J. at 492, 867 A.2d 1159 (DOT manual delegating safety *242 decisions to rescue crews does not trigger discretionary act immunity); Tice, supra, 133 N.J. 347, 627 A.2d 1090 (police chase does not involve high level discretion).
While there are cases which hold that in certain circumstances discretionary determinations on an operational level might be immunized under N.J.S.A. 59:3-2(a) or N.J.S.A. 59:2-3(a), see e.g. Perona v. Township of Mullica, 270 N.J.Super. 19, 636 A.2d 535 (App.Div.1993) (police immune from negligence claims where they failed to confine suicidal woman), such cases most often also entail application of another immunity under the TCA, as well.[3] No such considerations apply here.
Operational judgments such as those made herewhen, where and how to search for parties potentially injured in a highway crashdo not entail the type of discretionary planning or high level policy decisions insulated by either N.J.S.A. 59:2-3(a) or N.J.S.A. 59:3-2(a). Hence, those immunities, at least on the facts adduced thus far, do not apply.
Finally, defendant contends that it had no duty to rescue Arinze because it did not know he was injured and because "police officers do not have any legal duty to conduct a full-blown investigation of a routine car accident." In support of the latter argument, defendant cites Jackson v. Heymann, 126 N.J.Super. 281, 314 A.2d 82 (Law Div.1973), which held that a party injured in a motor vehicle accident had no cause of action against responding police officers for their failure to ascertain the identity of the other driver. To some extent, defendant's contention here has been considered in the context of the court's analysis of Henschke.
Neither of these arguments warrants a dismissal of plaintiffs' complaint. The contention that officers have no duty to rescue a person they do not know is injured begs the question. Praet, supra, 218 N.J.Super. 218, 527 A.2d 486 teaches that police have a duty to respond to accident scenes and render assistance. This duty would be meaningless if officers were not obligated as part of their duty to act reasonably to try to locate victims at the crash site and render emergency aid. A jury will have to determine if the officers acted reasonably in fulfilling their obligations at the crash scene.
As to Jackson, that decision simply holds that officers do not have a duty to particular citizens involved in an automobile collision to record all of the facts sufficient to identify a potential tortfeasor for purposes of a civil suit. That decision has no applicability here.
The court here does not address the potential limited immunity that may be available under N.J.S.A. 59:2-3(d) or N.J.S.A. 59:3-2(d). These issues were not raised and are, in any event, best reserved for resolution at trial on the basis of a full record.
Defendant argues that, notwithstanding the presence or absence of any immunities under the TCA, plaintiffs' claims under Portee, supra, 84 N.J. 88, 417 A.2d 521, must be dismissed because Arinze's parents did not witness his death. In Portee, Justice Pashman, writing for the New Jersey Supreme Court, explained that to sustain a cause of action for negligent infliction of emotional distress in connection with the death or serious injury of an intimate family member, it is "essential" that the "plaintiff witness the incident *243 which resulted in death or serious injury." Ibid. at 99, 417 A.2d 521.
Here, however tragic and traumatic the circumstances under which Clement and Lawritha Ojinnaka discovered the death of their son, the fact remains that they did not witness the incident which resulted in his death. Consequently, they may not maintain a cause of action against defendant for negligent infliction of emotional distress under Portee. Any extension of the cause of action announced in Portee, or departure from the strict conditions which the New Jersey Supreme Court set for such cause of action, cannot emanate from a trial court. Count three of the complaint, therefore, will be dismissed.
The motion for summary judgment is denied, except with respect to the claims under Portee.
NOTES
[1] In addition to statutory immunities and limitations on liability, public entities are also entitled "to any defenses that would be available to the public entity if it were a private person." N.J.S.A. 59:2-1(b).
[2] The Appellate Division in Massachi, supra, 396 N.J.Super. at 503, 935 A.2d 769 distinguished Sczyrek by reading it as immunizing a "discretionary decision not to provide police protection" at all. However such a distinction is evaluated, it is difficult to discern a unifying principle within such diverse cases.
[3] In Perona, the Appellate Division considered the application of N.J.S.A. 59:6-6. See also, Brown v. Brown, 86 N.J. 565, 432 A.2d 493 (1981) considering the application of both N.J.S.A. 59:4-2 and N.J.S.A. 59:2-3(a).