**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1431-15T2

CHRISTOPHER J. PANICO,

    Plaintiff-Appellant,

v.

MEREDITH WINNER, AUSTIN S.
PANDZA, ROBERT SOCKWELL, MARK
K. LEVITSKY, M.D., COHANZICK
ORTHOPEDICS, P.A., SOUTH JERSEY
HEALTHCARE REGIONAL MEDICAL CENTER,
SOUTH JERSEY HEALTH SYSTEM, INC.,
SOUTH JERSEY HOSPITAL, INC.,
and INSPIRA MEDICAL CENTERS, INC.,

    Defendants,

and

DANIEL MYERS and GRETCHEN
MYERS,

    Defendants-Respondents.

_____

Argued May 10, 2017 — Decided July 5, 2017

Before Judges Hoffman and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Docket No. L-
2290-13.

Jared N. Kasher argued the cause for
appellant (Hockfield & Kasher, LLC,

attorneys; Susan L. Moreinis, on the briefs).

Robert S. Florke argued the cause for respondents (Kent & McBride, P.C., attorneys; Kelly C. Scheese and John P. Shea, on the brief).

PER CURIAM

Plaintiff Christopher Panico appeals from the January 2, 2015 summary judgment order dismissing his personal injury negligence complaint against defendant Daniel Myers, and his wife, defendant Gretchen Myers (defendants).[1] We vacate and remand, finding genuine issues of material fact as to whether defendants breached the standard of care.

I.

We discern the following facts from the record, viewing the evidence in the light most favorable to plaintiff, the non-moving party. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014). This case arises from an accident that occurred on June 3, 2011, when plaintiff suffered a serious leg injury while using a trampoline at a high school graduation party. Homeowner Meredith Winner (Winner) held the party at her residence to celebrate the graduation of her daughter, Amelia. Plaintiff, then eighteen years old, attended the party along

---

[1] Because plaintiff's claims against all other defendants have been resolved or dismissed, we refer to Daniel and Gretchen Myers as "defendants" for ease of reference.

A-1431-15T2

with approximately twenty teenage guests. While most of the guests were at least eighteen years of age, plaintiff believed at least two of the guests were "under [eighteen]."

Winner testified at deposition that she initially planned on attending the party and serving as chaperone. However, she learned of a work obligation for that date, prompting her to tell Amelia she would have to cancel the party unless Amelia's grandfather (Winner's father), defendant Daniel Myers, could attend. Amelia then spoke with her grandfather, who agreed to attend with his wife. Winner stated she also spoke with her father about his attending the party, including his role as chaperone until Winner arrived. Winner said she "would not let [her] daughter have that party without an adult's supervision." Winner further stated defendants "knew [the party] was going to be inside," and Amelia knew the party was to be indoors.

At the time of the party, Winner owned a fourteen-foot diameter trampoline, located in the backyard of her home. Although she did not recall having a specific conversation with Amelia regarding trampoline use at the party, Winner said Amelia knew "the rules" that "nobody goes on [the] trampoline without me being there. We had those rules from the day we bought the trampoline. It's always a supervised situation." Winner imposed these rules because Amelia and her friends were "not to

be trusted, they're kids."  She added, "Amelia was the one who knew the rules, so she had talked to her grandfather prior [to the party].  They knew it was inside."

The following colloquy occurred at Winner's deposition regarding defendants:

> Q:   Did you speak with your father or Gretchen about the trampoline rules?
>
> A:   Not that I recall at that moment, but in the time we owned the trampoline it's been discussed.
>
> Q:   Were your father and Gretchen aware of the one[-]person rule on the trampoline?
>
> A:   You'd have to ask them.
>
> Q:   Is that something you've ever told them?
>
> A:   Possibly.
>
> . . . .
>
> Q:   And was it your expectation that your father and Gretchen would have prohibited any of the guests from using the trampoline?
>
> . . . .
>
> A:    Yeah.  I have supervisors there to make sure the children aren't doing stupid things. . . .

She also stated her father was "at my home a lot.  . . .  He knew we had a trampoline."  Winner further acknowledged that if

she had been at the party, "It's safe to say I would not have allowed anybody on the trampoline."

Despite Winner's rules and her efforts to secure adult supervision for the party, at some point during the party, several of the teenage guests went outside to use the trampoline. According to guest Austin Pandza, he used the trampoline first by himself. After using it again with guest Robert Sockwell, Pandza entered the house and suggested the guests go outside to play a game on the trampoline. Pandza said plaintiff agreed to play the game, which involved multiple people on the trampoline. The rules were that a user would be "out" if he fell down without bouncing back to his feet.

At his deposition, plaintiff testified he had never used a trampoline before the party. He initially did not want to use the trampoline, but Pandza "carried" him outside to use it.[2] However, after Pandza placed him down by the trampoline, plaintiff climbed onto the trampoline by himself. Plaintiff then jumped with Pandza and Sockwell for approximately one minute. At that point, Pandza jumped toward him, and "his leg came up and collided with [plaintiff's] leg," causing plaintiff to feel it "snap." Plaintiff described his injury as an accident, stating Pandza never intended to harm him.

---

[2]    Pandza, a 6'5" football player, weighed approximately 200 pounds at the time of the accident.

A-1431-15T2

Plaintiff's leg fracture resulted in multiple surgeries and the insertion of rods and screws. He eventually developed reflex sympathetic dystrophy (RSD), a chronic pain syndrome, resulting in his referral to a pain specialist. According to plaintiff, his doctor informed him he will "need a pain specialist pretty much forever because RSD won't go away."

Plaintiff stated defendants were the only adults at the party. He helped them with the food when they arrived, and they helped to set up. According to plaintiff, Amelia said her grandparents were going to "take charge" until her mother arrived. Plaintiff noted that prior to his accident, he observed Sockwell and a female guest tell defendants they were going to use the trampoline, and defendants responded, "Okay." He also noted defendants "were on the screened porch facing the trampoline" when Pandza "walked past them . . . carrying me."

Daniel Myers testified he was not responsible for ensuring the safe use of the trampoline at the party. He said his daughter asked him to supply refreshments, and he was not a chaperone but "in a sense" a "guest[] like everybody else." An attorney licensed in New Jersey and Virginia, he further stated, "I don't even know what a chaperone is." He denied receiving instructions to keep the guests safe, but he noted no one thought the guests would use the trampoline because it was "not

part of the party." He claimed to be "[v]aguely" familiar with trampolines in general, and he "might have been aware" of the trampoline prior to the accident.

Gretchen Myers testified that prior to plaintiff's injury she never observed the trampoline in the backyard. She denied having any conversations with Winner regarding a supervisory role at the party. She noted she was "[n]ot exactly" a guest, but she was there to help with food.

In May 2013, plaintiff filed a personal injury complaint against defendants, Winner, Pandza, Sockwell, and other parties not relevant to this appeal. Plaintiff alleged, in relevant part, that Daniel and Gretchen Myers negligently supervised the "premises" by allowing multiple persons to use the trampoline at the same time. Plaintiff also alleged defendants negligently failed to warn him of the dangers associated with multi-person trampoline use.

Thereafter, the parties engaged in extensive discovery, including numerous depositions. Plaintiff attempted to schedule Amelia's deposition, but she was away at college. On September 22, 2014, before the discovery end date, defendants filed a motion for summary judgment, asserting plaintiff failed to produce any precedent establishing a "duty requiring [defendants] to supervise the activities of guests at a private

party, particularly when [defendants] had no special relationship to the plaintiff."

Plaintiff filed a response to defendants' motion on October 7, 2014. Plaintiff argued discovery was not complete, and contradictory deposition testimony raised issues of facts for a jury to resolve. Plaintiff also filed a cross-motion for partial summary judgment on the issue of defendants' liability, contending defendants breached their duty of care as possessors of the premises by failing to warn him of the risks of trampoline use and by failing to prevent him from using it. Plaintiff further moved to extend discovery. The court granted this motion on November 7, 2014, extending discovery to March 20, 2015.

On December 19, 2014, the parties appeared before the motion judge for oral argument on the summary judgment motions. Following argument, the judge granted summary judgment in favor of defendants and rendered an oral opinion on the record. Assuming for the purposes of the motion that defendants were "host[s]/guest[s]" of the party, the judge relied on Hanna v. Stone, 329 N.J. Super. 385 (App. Div. 2000), finding,

> [Hanna involved] an underage party, under [eighteen] party, at which parents of the one child were sued by parents of other boys who got into a fight. The [c]ourt said the parents had no obligation to supervise the friends of the child in the party and that

supervision is using reasonable care. That is the host's duty is to refrain from any active wrongdoing or any willful injury and warn of any unknown dangers. And I think here there has been no showing even accepting facts as asserted by the plaintiff.

The judge further concluded defendants owed no duty to warn plaintiff of the dangers of trampoline use because they "were not the homeowner[s], and they were not in any better position than the plaintiff." He also declined to impose a "new duty" on defendants because "there really wasn't any relationship between the plaintiff and [defendants] here."

During argument, plaintiff's counsel raised the issue of Amelia's pending deposition. The judge inquired whether Amelia would testify to any issues besides whether defendants were hosts of the party; counsel responded that "[Amelia's] specific discussions [with defendants] were about the actual trampoline or any use of the property." The judge determined the incomplete discovery did not provide a reason to defer his decision on the cross-motions. Plaintiff then filed a motion for reconsideration, which the judge denied without oral argument. This appeal followed.

II.

In deciding a summary judgment motion on appeal, we "review the trial court's grant of summary judgment de novo under the

same standard as the trial court" and accord "no special deference to the legal determinations of the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Under this standard, we must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

"If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), certif. denied, 195 N.J. 419 (2008), overruled in part on other grounds, Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558 (2012)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

We first address whether defendants owed a duty of care to plaintiff. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2)

a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). The existence of a duty is a matter of law. Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 445 (1998).

In circumstances where the duty of care "is not well settled" by our previous case law, we must conduct a "full duty analysis." Pequero v. Tau Kappa Epsilon Local Chapter, 439 N.J. Super. 77, 88 (App. Div. 2015) (quoting Desir, Estate of ex rel. Estiverne v. Vertus, 214 N.J. 303, 317 (2013)). This analysis considers "the relationship of the parties; the nature of the attendant risk; the opportunity and ability to exercise care; and the public policy considerations." Id. at 89. "[W]hether a duty exists is ultimately a question of fairness." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) (quoting Weinberg v. Dinger, 106 N.J. 469, 485 (1987)).

However, as the motion judge noted, our decision in Hanna v. Stone guides our analysis in the instant matter. In Hanna, the defendants hosted a party for their son's fourteenth birthday at their home; the son invited approximately forty to fifty teenagers, who mainly congregated in the defendants' basement. Hanna, supra, 329 N.J. Super. at 388. At the party, "one boy struck and injured another boy" with whom he had a

"history of mutual dislike." Id. at 388, 390. The parents of the injured boy sued the defendants, asserting the defendants negligently failed "to properly supervise all visitors and invitees on the premises for the birthday party." Id. at 389.

In affirming summary judgment in favor of the defendants, we determined that "parents have no absolute duty to be constantly present among the teenagers at a social function and no duty to check the background and relationships of the invitees." Ibid. However, we rejected the defendants' position that they only owed the duty of a "social host," which "requires only that the hosts refrain from willful injury or active wrongdoing and warn of known risks that are not apparent or known to the licensee." Ibid. Instead, we found "the duty of the person conducting [an] activity [on his or her premises], such as parents sponsoring a party for their son, is 'simply to use reasonable care in all the circumstances.'" Ibid. (quoting Copanese v. Martinez, 35 N.J. Super. 118, 122-23 (App. Div. 1955)). We then concluded no reasonable jury could find the defendants breached this standard of care, and the defendants had no legal obligation to conduct background checks of the party guests. Id. at 389-90.

Conversely, applying this standard in the instant matter, we conclude plaintiff presented sufficient evidence to raise a

jury question whether defendants breached the duty they owed to plaintiff.  First, although defendants did not own the home in question, there was a genuine issue of fact as to whether they were the de facto "sponsor[s]" of the party in Winner's absence.  Second, the deposition testimony raises clear issues of fact as to defendants' understanding of their role at the party, specifically, whether they were bound to supervise the guests and keep them indoors.  Last, there is an issue of fact regarding the extent of defendants' knowledge of the trampoline and the house safety rules.  We find these issues are material to whether defendants exercised "reasonable care in all the circumstances," id. at 389, and therefore, must be decided by a jury at trial.

We also note the trial judge erred by granting summary judgment before the parties could depose Amelia.  Courts should refrain from granting summary judgment before discovery is complete unless "it is readily apparent that continued discovery would not produce any additional facts necessary to a proper disposition of the motion."  DepoLink, supra, 430 N.J. Super. at 341 (citing R. 4:46-5).  Here, we reject the conclusion of the motion judge that Amelia's deposition would not have revealed any material facts.  Rather, her testimony will likely provide additional information regarding facts relevant to this case,

particularly regarding the extent of defendants' knowledge of the trampoline and their knowledge of Winner's house rules regarding its use.

Furthermore, contrary to defendants' assertion, plaintiff's responsive cross-motion for summary judgment does not preclude our determination that the motion judge improperly entered summary judgment. Although "[t]he filing of a cross-motion for summary judgment generally limits the ability of the losing party to argue that an issue raises questions of fact," no per se rule bars the movant from seeking trial as an alternate form of relief. Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div.), certif. denied, 196 N.J. 85 (2008). Here, while summary judgment in favor of plaintiff is clearly inappropriate, we find his responsive cross-motion does not bar the matter from proceeding to trial.

Finally, we comment briefly on Bagnana v. Wolfinger, 385 N.J. Super. 1 (App. Div. 2006), a relevant case addressing liability for trampoline injuries, which the motion judge found distinguishable from the instant matter. Plaintiff relied on this case in his cross-motion for summary judgment, arguing that as social hosts and temporary possessors of the land, defendants had a duty to warn plaintiff of the danger posed by the trampoline.

In *Bagnana*, an adult plaintiff sued the defendant homeowners after she received an injury "double jumping" with her husband on the defendants' trampoline at a backyard barbeque. *Id.* at 3-4. The plaintiff claimed she was inexperienced on trampolines, so she sued the homeowners for failure to warn and make safe the dangerous condition on the premises. *Id.* at 3-4, 8. The trial court granted summary judgment, finding the plaintiff was aware of the "inherent" dangers associated with trampoline use. *Id.* at 4. We reversed, finding the jury should have assessed the relevant circumstances, including

> (1) whether defendants failed to enforce the manufacturer's rules and prohibitions pursuant to the User's Manual, (2) whether defendants removed the yellow warning placard from the trampoline prior to the accident, (3) whether defendants may have condoned or encouraged double jumping by allegedly failing to object when it occurred in their presence, and (4) whether plaintiff was comparatively negligent for failing to use due care for her own safety.

> [*Id.* at 10.]

In the instant matter, while defendants were not the homeowners, Winner's testimony indicated she had had discussed the trampoline rules with defendants "in the time we owned the trampoline." She further stated her expectation that defendants would have prohibited the party guests from using the

15                    A-1431-15T2

trampoline. We conclude the record contains sufficient evidence from which a reasonable jury might conclude that defendants knew or should have known that, as chaperones of the party, there was a necessity and opportunity for them to have prevented guests from using the trampoline at the party, or to have limited its use to one person at a time. In sum, we conclude the record presents genuine issues of material fact, precluding summary judgment. We therefore vacate the order granting defendants' motion and remand for further proceedings.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION