SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Estate of Hiram A. Gonzalez v. City of Jersey City** (A-19-20) (084381)

**Argued April 27, 2021 -- Decided August 4, 2021**

**SOLOMON, J., writing for a unanimous Court.**

The Court considers whether officers responding to a one-vehicle accident on a highway bridge may be entitled, under the particular facts and circumstances of this case, to any of the immunities from liability provided by the New Jersey Tort Claims Act (TCA), the Good Samaritan Act, or N.J.S.A. 26:2B-16, a statute that immunizes officers from liability for assisting persons intoxicated in a public place to an appropriate location.

On August 3, 2014, at approximately 2:26 a.m., Hiram Gonzalez was involved in a one-vehicle accident. Officers Leon Tucker and Saad Hashmi of the Jersey City Police Department (JCPD) were dispatched to the scene. They determined Gonzalez's vehicle was inoperable and called for a tow truck. Officer Tucker offered to drive Gonzalez to a nearby gas or PATH station, but Gonzalez refused, saying he would wait for his brother.

Officer Hashmi acknowledged that the standard police practice is to leave a stranded motorist in a safe place or offer them a ride within the city's limits, but he claimed there is no standard practice for when a stranded motorist refuses a ride but is not in a safe place. Officer Hashmi also stated that he and Officer Tucker could have waited with Gonzalez until he had a ride, but they did not because it was a busy Saturday night in the summer and "there were a lot of calls going out."

A call transcript shows that at 3:24 a.m., Officer Tucker told a dispatcher the "driver is gonna wait for his brother in the same location where he was. He refused to get in the car with us to head to the [S]hell station." The dispatcher responded "ok." Before leaving the scene after that call, the officers told Gonzalez to remain in the pedestrian walkway, which had a guardrail between the roadway and the sidewalk. Gonzalez was struck at around 3:42 a.m. According to a toxicology report, he had a BAC of .209% at the time he died. The officers claimed that Gonzalez did not appear intoxicated.

Gonzalez's Estate filed a complaint against the City of Jersey City, the JCPD, and Officers Tucker and Hashmi. The trial court granted summary judgment for defendants, finding that the officers undertook their duties in good faith and were therefore immune from liability under the TCA. The Appellate Division reversed,

holding that defendants were not entitled to TCA immunities. The court found that "because the officers were called to the scene of a motor vehicle accident, the officers' duty was ministerial in nature." The Court granted certification. 244 N.J. 341 (2020).

**HELD:** The immunities from liability provided by the Good Samaritan Act, N.J.S.A. 26:2B-16, and most TCA provisions invoked by defendants do not apply here. Defendants' actions may be entitled to qualified immunity under certain TCA provisions on which defendants rely, however, if the involved officers' actions were discretionary, rather than ministerial, in nature. In this instance, because of a factual dispute, that determination is for the jury to make upon remand.

1. The Good Samaritan Act's purpose is to encourage bystanders to provide affirmative aid to an injured person, even where there is no duty to do so. N.J.S.A. 2A:62A-1.1 immunizes law enforcement officers -- absent gross negligence -- "for any civil damages as a result of any acts or omissions undertaken in good faith in rendering care at the scene of an accident or emergency to any victim thereof." (emphasis added). Significantly, although the section provides immunity for certain "omissions" as well as "acts," omissions must occur "in rendering care" to be immunized. In this matter, the officers' actions do not implicate the Good Samaritan Act. (pp. 14-16)

2. N.J.S.A. 26:2B-16 is similarly inapplicable here. That statute imposes a duty upon an officer to remove an incapacitated individual from a public place to an intoxication treatment center. However, if an individual is intoxicated but not incapacitated, an officer is permitted, in his discretion, to remove the individual from a public place to an intoxication treatment center. The statute provides immunity that applies to both the decision to remove an intoxicated individual and the determination as to his incapacitation. Here, because neither officer believed that Gonzalez was intoxicated, they did not make the necessary determination that would allow their actions to be immunized under N.J.S.A. 26:2B-16. Additionally, they provided no assistance to Gonzalez, but rather left him on the same part of the bridge where they first encountered him. This is not action or assistance as contemplated by N.J.S.A. 26:2B-16. (pp. 16-19)

3. Liability under the TCA depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary. When a public entity's or employee's actions are discretionary, liability is imposed only for palpably unreasonable conduct. Liability for ministerial actions, in contrast, is evaluated based on an ordinary negligence standard. Ministerial acts are those which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority. One such ministerial act is a police officer responding to the scene of an accident. Such actions are not immunized even when they may entail operational judgments, such as when, where and how to carry out a required duty. In Suarez v. Dosky, the Appellate Division found that officers responding to the scene of a car accident were not insulated from liability under the TCA because they "negligently executed ministerial duties" when they

2

declined a request from the car's passengers to be escorted from the highway and two of those passengers were struck by vehicles and killed. 171 N.J. Super. 1, 5-10 (App. Div. 1979). Conversely, in Morey v. Palmer, the appellate court found that an officer's discretionary determination that a pedestrian who had been standing in a roadway was intoxicated but not incapacitated meant that the officer was immunized under the TCA. 232 N.J. Super. 144, 147-52 (App. Div. 1989). Whether an officer's conduct was ministerial or discretionary is a fact-sensitive analysis. (pp. 20-25)

4. Here, if the facts in dispute are necessary to resolve whether conduct is discretionary or ministerial, summary judgment is improper; resolution of those facts requires submission to the jury. At least some of the officers' actions in this case were ministerial, to which an ordinary negligence standard applies. However, the decision when to leave the accident scene and where to leave Gonzalez is a closer question. N.J.S.A. 59:2-3(d) and :3-2(d) provide qualified immunity "for the exercise of discretion when, in the face of competing demands, [the public entity or employee] determines whether and how to utilize or apply existing resources" unless "a court concludes that the determination . . . was palpably unreasonable." Whether or not conduct is palpably unreasonable is a jury determination. In the present case, there are genuine issues of material fact as to whether the officers were called away from the scene or decided on their own to leave, and whether they considered allocation of resources in reaching their decision. (pp. 26-29)

5. The Court reviews Model Civil Jury Charge 5.10A and provides guidance as to how that charge should be tailored and applied in this case. Only after determining whether the officers' actions were ministerial or discretionary should the jury apply the appropriate standard to evaluate the officers' conduct. If the jury determines that the decision to leave Gonzalez was ministerial, then the officers are not entitled to immunity under any provision of the TCA. The jury should therefore apply ordinary negligence principles, like those in Model Charge 5.10A, to the officers' conduct to determine whether defendants are liable. However, should the jury determine that the officers' decision to leave was discretionary, then qualified immunity exists in favor of defendants under N.J.S.A. 59:2-3(d) and :3-2(d), and the jury must then resolve any material facts at issue bearing upon whether defendants' conduct was palpably unreasonable. (pp. 30-31)

6. The Court explains why other sections of the TCA cited by defendants in asserting immunity from liability -- N.J.S.A. 59:2-4 and :3-5 (failure to enforce a law), :3-3 (good faith enforcement of a law), :5-5 (failure to make an arrest), and :5-4 (failure to provide police protection) -- do not apply here. (pp. 31-33)

**AFFIRMED AS MODIFIED. REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and PIERRE-LOUIS join in JUSTICE SOLOMON'S opinion. JUSTICE FERNANDEZ-VINA did not participate.**

SUPREME COURT OF NEW JERSEY

A-19 September Term 2020

084381

Estate of Hiram A. Gonzalez,
by Iraideliz Gonzalez,
Administrator Ad Prosequendum,

Plaintiff-Respondent,

v.

The City of Jersey City,
the Jersey City Police
Department, Police Officer
Leon Tucker, Jr., and Police
Officer Saad Hashmi,

Defendants-Appellants,

and

Eman S. Ahmed and Elham M. Mansour,

Defendants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| April 27, 2021 | August 4, 2021 |

Philip S. Adelman, Assistant Corporation Counsel,
argued the cause for appellants (Peter J. Baker,
Corporation Counsel, Jersey City Law Department,
attorneys; Philip S. Adelman and Stevie D. Chambers,
Assistant Corporation Counsel, on the briefs).

1

Lawrence D. Minasian argued the cause for respondent (Greenberg Minasian, attorneys; Lawrence D. Minasian and William S. Greenberg, on the briefs).

Robert F. Renaud argued the cause for amici curiae New Jersey State League of Municipalities and the New Jersey Institute of Local Government Attorneys (Renaud DeAppolonio, attorneys; Robert F. Renaud, on the brief).

Kenneth G. Andres, Jr., argued the cause for amicus curiae New Jersey Association for Justice (Andres & Berger, attorneys; Kenneth G. Andres, Jr., of counsel and on the brief, and Tommie Ann Gibney, on the brief).

Jonathan Testa submitted a brief on behalf of amicus curiae New Jersey Municipal Excess Liability Joint Insurance Fund (Dorsey & Semrau, attorneys; Fred C. Semrau, of counsel, and Jonathan Testa, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

In this appeal we are called upon to determine whether officers responding to a one-vehicle accident on a highway bridge may be entitled, under the particular facts and circumstances of this case, to any of the immunities from liability provided by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3, the Good Samaritan Act, N.J.S.A. 2A:62A-1 to -35, or N.J.S.A. 26:2B-16, a statute that immunizes officers from civil or criminal liability for assisting persons intoxicated in a public place to an appropriate location.

2

Hiram Gonzalez was in a one-vehicle accident on the Lincoln Highway Bridge in Jersey City. Officers Leon Tucker and Saad Hashmi of the Jersey City Police Department responded to the scene. After Gonzalez's pickup truck was towed, and he rejected offers from the officers to drive him to a nearby location off of the bridge, he called a friend to pick him up. The officers left before Gonzalez's ride arrived, leaving him behind a guardrail on the bridge. After the officers left, Gonzalez walked onto the road, where he was struck by a car and killed. Gonzalez had a blood alcohol content (BAC) of .209% at the time he died.

The Estate of Hiram Gonzalez filed a negligence action against defendants -- the City of Jersey City, the Jersey City Police Department, and Officers Tucker and Hashmi. The trial court granted summary judgment in favor of defendants, finding they were entitled as a matter of law to immunity from liability under the TCA. The Appellate Division reversed, holding that the officers' actions were ministerial and therefore the defendants are not entitled to the TCA's protections.

We modify and affirm the judgment of the Appellate Division. The immunities from liability provided by the Good Samaritan Act, N.J.S.A. 26:2B-16, and most TCA provisions invoked by defendants do not apply here. Defendants' actions may be entitled to qualified immunity under certain TCA

3

provisions on which defendants rely, however, if the involved officers' actions were discretionary, rather than ministerial, in nature. In this instance, because of a factual dispute, that determination is for the jury to make upon remand.

## I.

## A.

The trial and appellate records, including the depositions of the officers, reveal the following facts, which we review in a light most favorable to plaintiff, the non-moving party. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On August 3, 2014, at approximately 2:26 a.m., Gonzalez was involved in a one-vehicle accident on the Lincoln Highway Bridge in Jersey City. Officers Tucker and Hashmi were dispatched to the scene. When they arrived, Gonzalez's truck was facing the wrong direction against the curb. Gonzalez told them that the vehicle had spun out of control. The officers did not recall seeing any external damage to the car.[1] The officers pushed Gonzalez's vehicle to the side of the road and determined that it was inoperable.

---

[1] Photographs later revealed fresh damage to the front left of Gonzalez's vehicle.

4

The officers called for a tow truck, and after its arrival the driver was asked to take Gonzalez to the tow company's lot, but the driver refused. Officer Tucker then offered to drive Gonzalez to a nearby Shell gas station or the Journal Square PATH station, but Gonzalez refused. Officer Tucker repeated the offer several times and told Gonzalez the bridge was not a safe place to wait -- noting several places on the bridge with dim lighting -- but Gonzalez stated, "I am not riding with no Jersey City cops." At his deposition, Officer Hashmi testified that picking up Gonzalez from the poorly lit shoulder would be "dangerous," and neither he nor Officer Tucker believed the decision to remain on the bridge was wise. However, Gonzalez told the officers at the scene that he would wait for his brother, who was a detective with the Newark Police Department.[2]

David Martinez testified at his deposition that when Gonzalez called him at around 3 a.m., he was irate, and Martinez believed that Gonzalez was drunk. Gonzalez told Martinez that officers pulled him over and were trying to arrest him. Martinez testified he then spoke with an officer. According to Martinez, the officer on the phone told him that Gonzalez had been drinking and could

---

[2] Gonzalez was waiting for David Martinez, who is a police officer with the Newark Police Department. However, Martinez is a friend of Gonzalez's sister, rather than Gonzalez's brother.

not drive, and it would "be nice if somebody could come pick him up." When Martinez asked whether Gonzalez was under arrest, the officer said Gonzalez was not under arrest but needed a ride home. Martinez told the officer he would pick up Gonzalez. Neither officer recalled speaking with Martinez.

The officers waited with Gonzalez for Martinez for about fifteen to twenty minutes. Officer Hashmi acknowledged that the standard police practice is to leave a stranded motorist in a safe place or offer them a ride within the city's limits, but he claimed there is no standard practice for when a stranded motorist refuses a ride but is not in a safe place. Officer Hashmi also stated that he and Officer Tucker could have waited with Gonzalez until he had a ride, but they did not because it was a busy Saturday night in the summer and "there were a lot of calls going out."

Both officers stated that a dispatcher told them to resume patrol. The call transcript shows, however, that at 3:24 a.m., Officer Tucker told a dispatcher, "We've got the, uh, the vehicle, the uh, driver is gonna wait for his brother in the same location where he was. He refused to get in the car with us to head to the [S]hell station." The dispatcher responded "ok." Before leaving the scene after that call, the officers told Gonzalez to remain in the pedestrian walkway, which had a guardrail between the roadway and the sidewalk.

6

After the officers left the scene, at approximately 3:42 a.m., a 9-1-1 call reported a crash involving a pedestrian. Gonzalez had been hit by a car driving in the center lane of the eastbound section of the Lincoln Highway Bridge.[3] The accident occurred on a dark area of the bridge, around 1,500 feet from where the officers left Gonzalez behind the guardrail.

Earlier in the evening, Gonzalez had posted pictures of alcoholic drinks on his social media, and an opened bottle of Hennessy was found in his truck after the accident. According to a toxicology report, Gonzalez had a BAC of .209% at the time he died, and when he was with the officers his BAC would have been between .20% and .226% -- more than twice the legal limit. The toxicologist concluded that Gonzalez would have been "markedly intoxicated" when speaking with the police.

The officers claimed, however, that Gonzalez did not appear intoxicated. Officer Hashmi stated that he did not detect the smell of alcohol and Gonzalez was not staggering or slurring his words. Officer Tucker noted that he did not observe behaviors indicating that Gonzalez was intoxicated. Furthermore, Officer Tucker stated that he would have let Gonzalez drive away from the

---

[3] Another driver had noticed Gonzalez on the right lane of the bridge walking into the middle of the street. The driver described Gonzalez as "stumbling" and believed he was drunk due to his behavior and lack of reaction to oncoming cars.

7

scene had his vehicle been working, and he expressed surprise when he learned the level of Gonzalez's BAC.

B.

Gonzalez's Estate filed a complaint against defendants.[4] Defendants moved for summary judgment, arguing that various provisions of the TCA immunized them from liability. The trial court granted summary judgment for defendants and dismissed the Estate's complaint with prejudice, finding that the officers undertook their duties in good faith and were therefore immune from liability under N.J.S.A. 59:3-3. In doing so, the trial court analogized the facts of this case to those in Morey v. Palmer, 232 N.J. Super. 144 (App. Div. 1989), but distinguished them from Suarez v. Dosky, 171 N.J. Super. 1 (App. Div. 1979).

The Appellate Division reversed the grant of summary judgment, holding as a matter of law that defendants were not entitled to the immunities provided by the TCA. Relying on Suarez, the appellate court found that "because the officers were called to the scene of a motor vehicle accident, the

---

[4] The Estate also brought claims against both the driver and the owner of the car that struck Gonzalez. Prior to the motion for summary judgment, the Estate stipulated that its claims against the driver and the owner were dismissed with prejudice.

8

officers' duty was ministerial in nature -- they had a ministerial duty to render assistance to Gonzalez."

The Appellate Division framed the "controlling issue" in this case as "whether the officers satisfied their ministerial duty to render assistance to Gonzalez after his motor vehicle accident." In considering that issue, the Appellate Division noted "conflicting factual evidence" on issues such as how Gonzalez behaved; the conversations between Gonzalez, the officers, and Martinez; the condition of Gonzalez's car; the officers' exchange with the dispatcher; and the officers' assessment of where they left Gonzalez. The Appellate Division therefore determined that the factfinder at trial should resolve "whether the officers executed their ministerial duties negligently."

We granted defendants' petition for certification and allowed the parties to address immunity from civil liability under the Good Samaritan Act, an argument raised by amici. 244 N.J. 341 (2020). We also granted amicus curiae status to the New Jersey Municipal Excess Liability Joint Insurance Fund (NJMEL); the New Jersey State League of Municipalities (NJLOM) and the New Jersey Institute of Local Government Attorneys (NJILGA), participating jointly; and the New Jersey Association for Justice (NJAJ).

II.

A.

Defendants argue that <u>Morey</u> is the controlling precedent in this case, rather than <u>Suarez</u>, and that the trial court therefore correctly granted summary judgment. They assert that the officers used their discretion in good faith to assist an intoxicated Gonzalez. According to defendants, the officers' conduct was not ministerial simply because they were responding to a motor vehicle accident, and the Appellate Division's decision to reverse summary judgment has improperly "pre-determined" the officers' potential liability by deciding TCA immunities do not apply when responding to a car accident. Defendants assert that decision will cause law enforcement officers to avoid liability by considering the nature of a call when deciding whether to respond.

Defendants also claim that they are entitled to immunity under various provisions of the TCA, including N.J.S.A. 59:2-3(a), immunity for discretionary activities (public entity); N.J.S.A. 59:2-4, immunity for adoption or failure to adopt or enforce a law (public entity); N.J.S.A. 59:3-2(a) and (d), immunity for discretionary activities (public employee); N.J.S.A. 59:3-3, immunity for execution or enforcement of laws (public employee); N.J.S.A. 59:3-5, immunity for adoption or failure to adopt or enforce any law (public employee); N.J.S.A. 59:5-4, immunity for failure to provide police protection;

10

and N.J.S.A. 59:5-5, immunity for failure to arrest or retain a person arrested in custody. Defendants further argue they are entitled to immunity under N.J.S.A. 26:2B-16 and the Good Samaritan Act.

Amicus NJMEL supports many of defendants' arguments, contending that the officers' actions were not ministerial merely because they responded to a motor vehicle accident. The NJMEL further states that the Appellate Division's decision conflicts with both New Jersey case law and the legislative purpose of the TCA. Additionally, the NJMEL maintains that cases such as Suarez and Praet v. Borough of Sayreville, 218 N.J. Super. 218 (App. Div. 1987), have been superseded by the legislative amendment to the Good Samaritan Act, which immunizes the officers' actions. The NJMEL also argues that the Appellate Division decision in this case construed N.J.S.A. 26:2B-16 too broadly by imposing a new duty to detain and transport operators of disabled vehicles under almost any circumstances.

Amici NJLOM and NJILGA largely repeat the arguments of defendants and the NJMEL. They contend the Appellate Division incorrectly found that N.J.S.A. 59:2-3(d) and N.J.S.A. 59:3-2(d) applied here and negated other, applicable TCA immunities. Amici further contend that, in addition to being entitled to immunity from liability under N.J.S.A. 26:2B-16 itself, the officers are entitled to N.J.S.A. 59:2-4's and N.J.S.A. 59:3-5's immunities because

11

they failed to enforce N.J.S.A. 26:2B-16's provisions. Amici also assert that N.J.S.A. 59:3-3 applies because the statute requires only "good faith" in enforcing N.J.S.A. 26:2B-16. Finally, they contend that the type, manner, and extent of assistance that officers choose to render at the scene of an accident are discretionary and that the Appellate Division erred by finding the officers' actions ministerial.

B.

The Estate counters that the officers failed to perform their ministerial duty to render aid to an individual involved in a motor vehicle accident and that their actions are therefore not entitled to immunity under the TCA. The Estate additionally argues that Morey does not apply to this case because it did not involve a motor vehicle accident, and instead asserts that Suarez and Ojinnaka v. City of Newark, 420 N.J. Super. 22 (Law Div. 2010), establish that the officers had a duty to aid Gonzalez, even if that aid required waiting until Martinez arrived. Furthermore, the Estate asserts that the TCA immunities of N.J.S.A. 59:3-3 and :3-2(d) do not apply because the officers here failed to perform their ministerial duties.

The Estate further contends that the Good Samaritan Act does not apply in this case because the officers were not providing medical assistance and, if it does apply, the officers' actions were grossly negligent, precluding

immunity under the Good Samaritan Act. The Estate also counters amici's claim that <u>Praet</u>'s holding was abrogated by the amendment of the Good Samaritan Act, arguing that only the portion of the opinion concerning on-duty police officers is outdated.

Amicus NJAJ supports many of the Estate's arguments, asserting that because the officers were performing a ministerial act when they encountered Gonzalez, they are not entitled to immunity under the provisions of the TCA. The NJAJ asserts that <u>Suarez</u> is similar to this case, and the failure to properly perform a ministerial duty is not protected by provisions of the TCA. The NJAJ additionally argues that the officers were not engaged in policy determinations, thus their acts were ministerial.

The NJAJ claims that the Good Samaritan Act does not apply if a public employee has a preexisting ministerial duty to render aid. Additionally, the NJAJ contends that the Good Samaritan Act is inapplicable here because the officers did not render any care or emergency aid to Gonzalez, and even if the Good Samaritan Act did apply, the officers did not act in good faith and should not be entitled to immunity from liability. Finally, the NJAJ argues that N.J.S.A. 26:2B-16 does not apply since the officers did not determine that Gonzalez was intoxicated or incapacitated.

13

III.

Determining whether defendants are immune from liability requires consideration of the scope of the asserted grounds for immunity -- the Good Samaritan Act, N.J.S.A. 26:2B-16, and the TCA -- followed by application of any laws found to be pertinent to the facts of this case. We begin by explaining why neither the Good Samaritan Act nor N.J.S.A. 26:2B-16 applies here before turning to the TCA, certain provisions of which may apply.

A.

"Good Samaritan legislation has, at its core, the goal of encouraging the rendering of medical care to those who need it but otherwise might not receive it (ordinarily roadside accident victims), by persons who come upon such victims by chance, without the accoutrements provided in a medical facility . . . ." Velazquez ex rel. Velazquez v. Jiminez, 172 N.J. 240, 250 (2002).

New Jersey's Good Samaritan Act provides that

> [a]ny individual . . . who in good faith renders emergency care at the scene of an accident or emergency to the victim or victims thereof, or while transporting the victim or victims thereof to a hospital or other facility where treatment or care is to be rendered, shall not be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care.
>
> [N.J.S.A. 2A:62A-1.]

14

The Good Samaritan Act therefore grants immunity to "anyone who rendered care at the scene of an accident or emergency," "in derogation of the basic common law principle that one who volunteers to render assistance must do so reasonably." Velazquez, 172 N.J. at 258. The Good Samaritan Act's purpose is to encourage bystanders "to provide affirmative aid to an injured person," even where the common law imposes no duty to do so. Id. at 247-50.

In 1996, the Legislature added N.J.S.A. 2A:62A-1.1 to the Good Samaritan Act. See L. 1996, c. 115, § 5. That section immunizes law enforcement officers for certain conduct at the scene of an accident or emergency:

> A . . . law enforcement officer is not liable for any civil damages as a result of any acts or omissions undertaken in good faith in rendering care at the scene of an accident or emergency to any victim thereof . . . provided, however, that nothing in this section shall exonerate a law enforcement officer for gross negligence.
>
> [N.J.S.A. 2A:62A-1.1 (emphasis added).]

Section 1.1 is part of a "legislative scheme in which police officers . . . responding to an emergency are immunized for their negligent acts." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 573-74 (2012). Significantly, although the section provides immunity for certain "omissions" as well as "acts," omissions must occur "in rendering care" to be immunized.

15

In this matter, the officers' actions do not implicate the Good Samaritan Act. The law enforcement provision of the Good Samaritan Act is "one of a series of statutes . . . which provide qualified immunity to persons who <u>provide medical assistance</u> in emergency situations." <u>De Tarquino v. City of Jersey City</u>, 352 N.J. Super. 450, 455 (App. Div. 2002) (emphasis added). None of the officers' actions here involved such medical or emergency care. Nothing in the record indicates that Gonzalez was in need of <u>medical</u> aid at the time of his interaction with officers. And the officers, who simply left Gonzalez where they first encountered him, did not render affirmative aid, or "care," to Gonzalez within the meaning of the statute. The officers' failure to act is not the kind of "good faith . . . rendering [of] care" immunized by N.J.S.A. 2A:62A-1.1. Simply put, the Good Samaritan Act does not apply to the officers' interactions with Gonzalez, and defendants are not entitled to immunity under N.J.S.A. 2A:62A-1 or -1.1.[5]

B.

N.J.S.A. 26:2B-16 is similarly inapplicable here. That statute "imposes a duty upon [an] officer to remove an [incapacitated] individual from a public

---

[5] Because the Good Samaritan Act does not apply to this case, we need not determine whether <u>Praet</u>'s holding -- that "the Good Samaritan Act does not apply to those, including police officers, who have a preexisting duty to act," 218 N.J. Super. at 225 -- has been abrogated by N.J.S.A. 2A:62A-1.1.

16

place to an intoxication treatment center." Morey, 232 N.J. Super. at 149 (emphasis omitted). It provides that "[a]ny person who is intoxicated in a public place and who a police officer has reason to believe is incapacitated shall be assisted by the police officer to an intoxication treatment center or other facility." N.J.S.A. 26:2B-16 (emphasis added).

However, if an individual is intoxicated but not incapacitated, an officer is permitted, "in his discretion, to remove [the] individual from a public place to an intoxication treatment center." Morey, 232 N.J. Super. at 149; see N.J.S.A. 26:2B-16 ("Any person who is intoxicated in a public place may be assisted to his residence or to an intoxication treatment center or other facility by a police officer or other authorized person" (emphasis added)). The statute thus grants the police "great latitude when determining how to handle a publicly intoxicated person." Morey, 232 N.J. Super. at 153.

N.J.S.A. 26:2B-16 also provides immunity from liability[6] to "[a]ll persons acting under the provisions of this section," who "shall be considered as acting in the conduct of their official duties and shall not be held criminally or civilly liable for such acts." That immunity "applies to both the decision to

_____

[6] This immunity has been held to be "similar in operation" to N.J.S.A. 59:3-3's immunity for the execution or enforcement of laws, because both "are focused on the officer in his law-enforcement function." Morey, 232 N.J. Super. at 154. N.J.S.A. 59:3-3 will be discussed in Section III.C.4., infra.

17

remove an intoxicated individual and the determination as to his incapacitation." Morey, 232 N.J. Super. at 154.

Importantly, the officers here testified that they did not believe that Gonzalez was intoxicated or incapacitated at the time of the encounter. Rather, both officers expressed their belief that Gonzalez was not intoxicated, noting that they did not detect the smell of alcohol, Gonzalez was not staggering or slurring his words, and his behaviors did not indicate intoxication. Indeed, Officer Tucker stated he would have allowed Gonzalez to drive away from the scene had Gonzalez's vehicle not been disabled. And there is no evidence that Gonzalez was incapacitated.

Because neither officer believed that Gonzalez was intoxicated, they did not make the necessary determination that would allow their actions to be immunized under N.J.S.A. 26:2B-16. We therefore find that N.J.S.A. 26:2B-16 does not apply to this case. Additionally, even if the officers believed Gonzalez to be intoxicated, the statute's immunity applies only if police officers affirmatively act. Here, the officers provided no assistance to Gonzalez, but rather left him on the same part of the bridge where they first encountered him. This is not action or assistance as contemplated by N.J.S.A. 26:2B-16.

18

In reaching this decision, we note that had the officers determined Gonzalez to be intoxicated, whether or not he was also incapacitated, they had the authority to remove him from the bridge -- even against his will -- under N.J.S.A. 26:2B-16. To do so would not have required the officers to arrest Gonzalez. And, even if the officers had to use reasonable force to remove him, they would have been immune from liability for their actions. N.J.S.A. 26:2B-16.

C.

Having determined that neither the Good Samaritan Act nor N.J.S.A. 26:2B-16 applies here, we next consider whether the TCA's immunity from liability applies to defendants. The TCA was enacted after "this Court's decision in Willis v. Department of Conservation & Economic Development, 55 N.J. 534, 537-41 (1970), which overruled the centuries-old common-law doctrine of sovereign immunity in tort." Bombace v. City of Newark, 125 N.J. 361, 372 (1991). The TCA "was clearly intended to reestablish a system in which immunity is the rule, and liability the exception." Ibid. "When both liability and immunity appear to exist, the latter trumps the former." Tice v. Cramer, 133 N.J. 347, 356 (1993). "Even when one of the [TCA's] provisions establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity." Rochinsky v. Dep't of Transp., 110

19

N.J. 399, 408 (1988).  We begin our analysis with an overview of the provisions of the TCA relevant to our determination.

1.

"The standard for liability under the TCA depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary."  Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 490 (2014) (citing N.J.S.A. 59:2-3(d)).  When a public entity's or employee's actions are discretionary, liability is imposed only for "palpably unreasonable conduct."  Id. at 495.  Liability for ministerial actions, in contrast, "is evaluated based on an ordinary negligence standard."  Id. at 490.

The TCA does not define "discretionary act" or "ministerial act." Black's Law Dictionary, however, defines a "discretionary act" as one "involving an exercise of personal judgment and conscience."  586 (11th ed. 2019).  In comparison, a "ministerial act" is one "performed without the independent exercise of discretion or judgment."  Id. at 31.  This Court has recognized that a "literal interpretation of the term 'discretion' . . . would in effect eliminate most of the liability which the Legislature clearly intended to permit when it enacted the [TCA]" because "[a]lmost all official conduct, no matter how ministerial, involves the exercise of some judgment and decisionmaking."  Costa v. Josey, 83 N.J. 49, 60 (1980).

20

Instead, to advance the Legislature's intent in enacting the TCA, we have interpreted the phrase "exercise of . . . discretion" in N.J.S.A. 59:2-3(a) to refer "to actual, high-level policymaking decisions involving the balancing of competing considerations.'" See Coyne v. Dep't of Transp., 182 N.J. 481, 489 (2005) (alteration in original) (quoting Costa, 83 N.J. at 55). Discretionary immunity is intended to protect policymakers, and those protections cannot be delegated to other workers through a policy or manual "under the guise of engaging in a discretionary act." Id. at 492.

Ministerial acts, in contrast, are those "which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done." S.P. v. Newark Police Dep't, 428 N.J. Super. 210, 231 (App. Div. 2012) (quoting Morey, 232 N.J. Super. at 151). Such actions are not immunized even when they may entail "[o]perational judgments," such as "when, where and how" to carry out a required duty. See Ojinnaka, 420 N.J. Super. at 37; Morey, 232 N.J. Super. at 149. One such ministerial act is a police officer responding to the scene of an accident. E.g., Ojinnaka, 420 N.J. Super. at 37 ("[P]olice have a duty to respond to accident scenes and render assistance."); Praet, 218 N.J. Super. at 223 (stating that

21

officers have "a [ministerial] duty by virtue of their employment to render emergency assistance to victims of automobile accidents").

"Although it is true that a municipal police officer does not constitute a high-ranking public employee, [N.J.S.A. 59:3-2(d) is] not always limited to such individuals." Morey, 232 N.J. Super. at 152. That notion recognizes that the "[d]iscretionary decisions of officers in the field may subject a municipality to claims equal to or in excess of those resulting from the errors in judgment or discretion exercised by high-ranking public employees." Ibid. Thus, immunity from liability under the TCA may apply to police officers' decisions in the field. See, e.g., ibid.; accord O'Connell v. State, 171 N.J. 484, 498 (2002).

In S.P., for example, the Appellate Division found "that discretionary immunity should attach under the TCA" to the decisions made by an officer in response to a domestic violence call because those decisions "require[d] a significant thoughtful analysis and exercise of personal deliberations regarding a variety of factors." 428 N.J. Super. at 231. That said, this Court held in Tice that an officer's conduct during a car chase was not immunized under N.J.S.A. 59:3-2(a) because "[t]he officer's conduct, comprised of the decision whether to pursue, how to pursue, and whether to continue to pursue, is . . . infinitely distant from high-level policy or planning decisions." 133 N.J. at 351, 366-67.

22

As those cases suggest, the distinction between ministerial and discretionary action by police officers is situation-specific and thus can be difficult to discern. In essence, where "the circumstances [are] thought to be such that reasonable policemen in the position of the defendants could have differed about whether or how to act," the specific decision at issue may be considered discretionary for the purposes of determining TCA immunity. See Del Tufo v. Twp. of Old Bridge, 278 N.J. Super. 312, 325 (App. Div. 1995); see also S.P., 428 N.J. Super. at 231.

Suarez and Morey, two cases from the Appellate Division, illustrate the difference between ministerial and discretionary police actions in the specific context of people killed after being left by police on roadways.

In Suarez, police officers arrived at the scene of a minor motor vehicle accident. 171 N.J. Super. at 5. The accident had disabled the victims' car, which was resting on the shoulder of a highway. Ibid. After a truck removed the car from the road, the officers declined a request from the car's passengers to escort them from the highway. Id. at 5-6. The officers instead advised the passengers to walk to the nearest exit and departed. Id. at 6. While the passengers were walking, one of the children in the party wandered onto the highway and was struck and killed by a vehicle, and another member of the party who ran after the child was also killed. Ibid.

23

In finding that the TCA immunity asserted[7] did not apply, the Appellate Division held that "[a]lthough a police officer may not be liable for failing to respond (if, for example, he was performing some other official duty), if he does respond he will be subject to liability for negligence in the performance of his ministerial duties." Id. at 9-10. In reaching that decision, the Appellate Division acknowledged that "police officers['] . . . duties embrace protection of the public's safety on the highways." Id. at 10. Accordingly, the Appellate Division found that the police officers in that case were not "insulate[d] . . . from unfortunate results of their negligently executed ministerial duties." Ibid.

Conversely, in Morey, a police officer responded to a call regarding a pedestrian in the middle of a roadway. 232 N.J. Super. at 147. The police officer determined the pedestrian was intoxicated, and the pedestrian complied with the officer's order to leave the roadway. Ibid. The officer "determined that the traffic hazard had been eliminated and left the scene." Ibid. Three hours and forty minutes later, the pedestrian was "struck and killed by a truck one-quarter of a mile from" where the officer had ordered the pedestrian "out of the roadway." Ibid.

---

[7] The Appellate Division's decision involved N.J.S.A. 59:5-4, which provides immunity for failure to provide police protection. Suarez, 171 N.J. Super. at 9. This TCA provision is described in more detail in Section III.C.4., infra.

24

The court found the TCA "precluded any further responsibility on the part of defendants." Id. at 148. In doing so, the court distinguished Suarez, noting that the officer in the case before it "was not responding to an accident scene." Id. at 150. Furthermore, the pedestrian understood and complied with the officer's orders; it was not until hours after the officer's interactions with the pedestrian that the pedestrian was struck and killed. Ibid. The Morey court further concluded that the defendants were immune because of the officer's "discretionary determination that decedent was not incapacitated." Ibid. And the officer's only mandatory duty under N.J.S.A. 26:2B-16 was to "remove decedent to an intoxication treatment facility if he determined that decedent was incapacitated." Ibid. Because the officer concluded the decedent was merely intoxicated, not incapacitated, the court found that the officer's "decisions in the field were protected [as discretionary] under N.J.S.A. 59:3-2(d) and N.J.S.A. 59:3-5." Id. at 152.

Suarez and Morey are the cases factually closest to the scenario here and turned on whether the officers' conduct was ministerial or discretionary. Resolution of whether a police officer's actions are ministerial or discretionary depends upon the particular facts and circumstances bearing upon the question; it is a fact-sensitive analysis. We therefore turn to the facts of this case.

25

2.

Here, the trial court granted summary judgment in favor of defendants, concluding that the TCA's immunity from liability applied as a matter of law. We review that conclusion applying the same standard as "the trial court, that is, 'we must view the facts that may be inferred from the pleadings and discovery in the light most favorable to plaintiffs.'" Coyne, 182 N.J. at 491 (quoting Strawn v. Canuso, 140 N.J. 43, 48 (1995)). We determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Thus, if the facts in dispute are necessary to resolve whether conduct is discretionary or ministerial, summary judgment is improper; resolution of those facts "requires submission to the jury." Henebema v. S. Jersey Transp. Auth., 430 N.J. Super. 485, 506 (App. Div. 2013), aff'd on other grounds, 219 N.J. 481 (2014).

26

> [W]hen the evidence establishes a genuine issue of material fact regarding whether the alleged failures of a public entity were the result of discretionary decisionmaking as to how to use its resources, or instead involved ministerial acts mandated by law or practice, then that fact issue must be submitted to the jury.
>
> [Id. at 491.]

As we have noted, responding to the scene of an accident is a ministerial duty for police officers. See, e.g., Ojinnaka, 420 N.J. Super. at 37; Praet, 218 N.J. Super. at 223. Thus, at least some of the officers' actions in this case, such as moving Gonzalez's car off the roadway and deciding to tow the disabled vehicle, were ministerial, to which an ordinary negligence standard applies. However, the decision when to leave the accident scene and where to leave Gonzalez is a closer question; the officers maintain that competing demands caused them to leave Gonzalez on the bridge that evening.

N.J.S.A. 59:2-3(d) and :3-2(d) provide qualified immunity "for the exercise of discretion when, in the face of competing demands, [the public entity or employee] determines whether and how to utilize or apply existing resources" unless "a court concludes that the determination . . . was palpably unreasonable." "'Palpably unreasonable' means more than ordinary negligence . . . '[I]t must be manifest and obvious that no prudent person would approve of its course of action or inaction.'" Coyne, 182 N.J. at 493

27

(quoting <u>Kolitch v. Lindedahl</u>, 100 N.J. 485, 493 (1985)). It "implies behavior that is patently unacceptable under any given circumstance." <u>Kolitch</u>, 100 N.J. at 493. Whether or not conduct is palpably unreasonable is a jury determination. <u>Henebema</u>, 430 N.J. Super. at 506.

Unlike in <u>Morey</u>, 232 N.J. Super. at 150, the officers here were responding to an accident scene. Their response thus involved the ministerial duty to render aid to Gonzalez. Additionally, the officer in <u>Morey</u> exercised discretion after determining the decedent was intoxicated. <u>Id.</u> at 147. Here, the officers did not act believing Gonzalez was intoxicated.

This case is also distinguishable from <u>Suarez</u>. The officers in <u>Suarez</u> declined the victims' request to escort them off the highway after their car became disabled. 171 N.J. Super. at 5-6. The allocation of resources was thus never a consideration for the officers in <u>Suarez</u>. In the present case, Gonzalez refused offers of a ride away from the highway, and there is a genuine issue of material fact as to whether the officers were called away from the scene or decided on their own to leave after their offers of a ride were declined.

In addition, the officers here testified that they were directed by dispatch to resume their patrol, and Officer Hashmi stated that they did not wait with Gonzalez until Martinez arrived because it was a busy Saturday night. However, the transcript of the call shows that Officer Tucker told the

28

dispatcher that Gonzalez would wait on the bridge after refusing the officers' offer of a ride, to which the dispatcher replied "ok." Whether the officers were directed to leave the scene or made the decision to leave themselves is thus a genuine issue of material fact. Whether the officers in fact exercised discretion and considered allocation of resources in reaching their decision to leave is also an issue of material fact.

In Henebema, the Appellate Division sent the ministerial/discretionary determination to the jury because "the record contain[ed] evidence that defendants 'consciously considered' the action they took that night in light of conflicting or competing demands where resources were obviously pushed to the limit." 430 N.J. Super. at 505. A similar question exists here: were Officers Tucker and Hashmi faced with competing demands upon police resources, or not? That question is properly one for the jury here, as it was in Henebema.

3.

In sum, the unique circumstances of this case and the material facts that are in dispute warrant presentation to a jury of the threshold factual questions essential to determine whether the officers' conduct was ministerial, for which the ordinary negligence standard applies, or discretionary and, if discretionary, whether the officers' conduct was palpably unreasonable.

29

When these issues are presented to the jury, it must be with appropriate instructions. Currently, the Model Jury Charge for general negligence acknowledges that

> [i]f at trial there is a genuine dispute of material fact as to whether one or more of the parties performed a discretionary function (subject to a "palpably unreasonable" standard) or ministerial function (subject to "ordinary negligence principles"), N.J.S.A. 59:2-3, N.J.S.A. 59:3-2, [the judge] must tailor both the final jury charge and the verdict sheet so the jury can make the appropriate fact findings and evaluate the party's liability exposure using the proper standard of care.
>
> [Model Jury Charge (Civil), 5.10A, "Negligence and Ordinary Care -- General" (rev. May 2019).]

When judges tailor the charge and verdict sheet, they must do so in a way that will allow the jury to distinguish between the predicate facts that tend to show that a defendant engaged in a ministerial act from those that tend to show the exercise of discretion. See Henebema, 430 N.J. Super. at 506. We adopt the guidance of Henebema that "the jury verdict sheet [should] contain questions for each disputed predicate fact." Id. at 507. In this case, for example, we suggest that the jury verdict sheet ask whether the decision to leave the scene of Gonzalez's accident was the result of a conscious consideration and balancing of Gonzalez's relative safety when left and police department resources in the face of competing demands.

30

Only after determining whether the officers' actions were ministerial or discretionary should the jury apply the appropriate standard to evaluate the officers' conduct. If the jury determines that the decision to leave Gonzalez was ministerial, then the officers are not entitled to immunity under any provision of the TCA. The jury should therefore apply ordinary negligence principles, such as those established in Model Jury Charge 5.10A, to the officers' conduct to determine whether the defendants are liable.

However, should the jury determine that the officers' decision to leave was discretionary, then qualified immunity exists in favor of defendants under N.J.S.A. 59:2-3(d) and :3-2(d), and the jury must then resolve any material facts at issue bearing upon whether the defendants' conduct was palpably unreasonable -- whether "no prudent person would approve of [their] course of action or inaction," Coyne, 182 N.J. at 493 (quoting Kolitch, 100 N.J. at 493), and whether their conduct "implies behavior that is patently unacceptable under any given circumstance," Kolitch, 100 N.J. at 493.

4.

For completeness, we review briefly other sections of the TCA cited by defendants in asserting immunity from liability -- N.J.S.A. 59:2-4, :3-3, :3-5, :5-4, and :5-5.

31

For the same reasons that N.J.S.A. 26:2B-16 does not apply to this case, we find that neither the immunity for failure to enforce a law, N.J.S.A. 59:2-4 and :3-5, nor the immunity for good-faith enforcement of a law, id. at :3-3, applies here.  The officers made no determination that Gonzalez was intoxicated, and there is no indication that Gonzalez was incapacitated.  As such, although the officers could have assisted Gonzalez to his home or to a treatment center, they were under no duty to do so under N.J.S.A. 26:2B-16, and there was therefore no applicable law to enforce or fail to enforce.

We similarly find that the immunity for failure to make an arrest, N.J.S.A. 59:5-5, does not apply.  N.J.S.A. 26:2B-16 would have given the officers the authority to remove Gonzalez from the bridge without the need to arrest him.

Additionally, immunity for failure to provide police protection, N.J.S.A. 59:5-4, does not apply.  N.J.S.A. 59:5-4 applies generally to "political decisions," such as a town's decision to staff and equip a police force, Suarez, 171 N.J. Super. at 9, or other "higher-level discretionary acts," see Wuethrich v. Delia, 134 N.J. Super. 400, 412 (Law Div. 1975).  Such immunity does not encompass the kind of decisions the officers made in responding to Gonzalez's accident.

IV.

For the reasons set forth above, we affirm and modify the judgment of the Appellate Division. We leave the determination of whether the officers' actions were ministerial or discretionary to the jury. After making that determination, the jury should then consider defendants' conduct under the appropriate standard -- ordinary negligence or palpable unreasonableness. We remand to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and PIERRE-LOUIS join in JUSTICE SOLOMON'S opinion. JUSTICE FERNANDEZ-VINA did not participate.

33